UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FIRST DATA MERCHANT SERVICES
CORPORATION,

                    Plaintiff,

          - against -                        **MEMORANDUM AND ORDER**
                                                    07-CV-2083 (RRM)(ETB)

OXFORD MANAGEMENT SERVICES, INC.,

                    Defendant.
----------------------------------------------------------X

**MAUSKOPF, United States District Judge:**

       Plaintiff First Data Merchant Services Corp. ("FDMS" or "Plaintiff") brings this action against Oxford Management Services, Inc. ("Oxford" or "Defendant"), seeking damages for Defendant's alleged breach of contract. Currently before the Court is Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiff's motion for summary judgment is GRANTED.

## **BACKGROUND**[1]

       The following facts are either undisputed or described in the light most favorable to the Defendant. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2001). Plaintiff is a corporation that processes credit and debit card transactions for merchants on behalf of VISA U.S.A. and MasterCard International. (Pl. 56.1 Stmt. (Doc. No. 37) ¶ 2.) Defendant is a debt

---

[1] Unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Ordinarily, failure to comply with the Local Rules regarding 56.1 Statements would result in the material facts in the non-complying party's Statement being deemed admitted for the purposes of deciding the pending summary judgment motion. *See* Local Civil Rule 56.1(c). A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Rateau v. City of N.Y.*, No. 06-CV-4751 (KAM)(CLP), 2009 U.S. Dist. LEXIS 90112, at *2 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed); *Robinson v. Keyspan*, No. 03-CV-4796 (FB)(LB), 2005 U.S. Dist. LEXIS 27057, at *2 n.2 (E.D.N.Y. Nov. 9, 2005) (same). Accordingly, for the purposes of this motion, Plaintiff's statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

collection agency. (*Id.* ¶ 4.) The parties contractual relationship dates from November 2001. (Def. 56.1 Cntrstmt. (Doc. No. 41) ¶ 32; Def. Mem. in Opp. to Pl. Mot. for Summ. J. ("Def. Mem.") (Doc. No. 38) Exs. A, B.)

The parties entered into a Collection Service Agreement ("Agreement") in June 2004, in which Defendant agreed to perform collection services with respect to certain delinquent receivables ("Accounts Receivable") on Plaintiff's behalf. (*Id.* ¶ 6.) According to the Agreement: "For the collection of Accounts Receivable from Debtors and/or Guarantors whose accounts have been placed with [Defendant] by [Plaintiff], [Defendant] is entitled to a fee of 25% of the gross amount collected by [Defendant] on the Account Receivable." (Def. 56.1 Cnrstmt. ¶ 10; *see also* Agreement § 3(a).)

The Agreement provides, *inter alia*, that Defendant must "establish a single Client Trust Account under the name of First Data Merchant Services and deposit all Accounts Receivable payments made by any debtor, guarantor, or other payor into the account immediately upon receipt." (Pl. 56.1 Stmt. ¶ 7; *see* Compl. (Doc. No. 1) Ex. A ("Agreement") § 7.) Defendant was also obligated to adhere to two general reporting requirements,[2] and to "fully and accurately report all funds received on account of the Accounts Receivable." (Pl. 56.1 Stmt. ¶ 12; *see also* Agreement § 4(f).)

Either party was entitled to terminate the Agreement upon thirty days written notice. (Pl. 56.1 Stmt. ¶ 9; Agreement § 14.) Further, "within three (3) business days of the effective date of

---

[2] First, Defendant was required to prepare and deliver to Plaintiff by the fifth of each month "a report of collection activities for the previous month," with the following information regarding each Account Receivable: identification of any Account Receivable submitted for collection, the date of referral to Defendant, its status of collection, the amount to be collected, the total amount collected to date for each, and any determined to be uncollectible. (*See* Agreement § 2(e).) Second, the Agreement requires Defendant to prepare and deliver to Plaintiff an invoice by the fifteenth of each month, including the following information: the Account Receivable collected, the amount collected, the date on which the collected amount was deposited into the Client Trust Account, the commission due, and any approved out-of-pocket expenses. (Def. 56.1 Cntrstmt. ¶ 8; *see also* Agreement § 3(e).)

termination of this Agreement, or cessation of any service with respect to an Account Receivable, [Defendant] shall return to [Plaintiff] all information with respect to such Account Receivable . . . and a report identifying the payment, if any, received with respect to such Receivable. In addition, any and all funds in the Client Trust Account(s) shall be immediately transferred to the [Plaintiff]." (Pl. 56.1 Stmt. ¶ 15; *see also* Agreement § 15.)

The Agreement contains an integration clause governing other possible agreements between the parties: "This Agreement constitutes the entire Agreement between the parties and may not be amended changed or modified unless in writing signed by both parties. This agreement supersedes all prior written or oral agreements between [Plaintiff] and [Defendant], and governs all outstanding accounts referred to [Defendant], by [Plaintiff] prior to the effective date of this Agreement." (Pl. 56.1 Stmt. ¶ 13; *see also* Agreement § 11.)

Defendant collected Accounts Receivable payments on Plaintiff's behalf from October 2004 through December 2005. (Pl. 56.1 Stmt. ¶ 22.) However, Defendant did not establish a Client Trust Account, deposit any of the Accounts Receivable payments in a Client Trust Account, or remit the funds in gross to Plaintiff, as contemplated by the Agreement. (*Id*. ¶¶ 23-26.) Instead, Defendant commingled the Accounts Receivable payments with other funds and withheld some Accounts Receivable payments from Plaintiff in the amount of $1,301,777.04. (*Id*. ¶¶ 27-28.) Defendant admits that it collected this sum, and did not remit it to Plaintiff for more than five years. (*Id*. ¶¶ 39-45, 235.)

Plaintiff first argues that Defendant breached the Agreement by failing to establish a Client Trust Account in which Plaintiff's funds could be segregated, failing to timely remit those payments in gross to Plaintiff, and failing to remit all funds collected on Plaintiff's behalf within three days of termination of the contract. Second, Plaintiff contends that Defendant's material

breaches preclude it from collecting the usual 25% commission on the $1,301,777.04 of withheld funds, in the amount of $325,444.25. Third, Plaintiff notes that Defendant's cross-claim regarding entitlement to 25% of so-called direct payments, for which Defendant has not moved for summary judgment, cannot defeat Plaintiff's summary judgment claim as to breach.

Defendant does not dispute the facts put forward by Plaintiff showing material breach. Instead, it disclaims liability by alleging that the Agreement was amended by the parties during the course of performance. Defendant further defends the withholding of payments by claiming that it did so as an "offset" in response to Plaintiff's alleged failure to pay Defendant commission on certain "direct payments," the subject of Defendant's cross-claim. (*Id*. ¶¶ 239-40.) Defendant claims that, in the fall of 2004, Plaintiff was receiving direct payments – the proper meaning of which is disputed by the parties[3] – on the basis of a review of transaction records at Plaintiff's offices, and in 2005 demanded 25% commission on certain direct payments it identified. (Pl. 56.1 Stmt. ¶ 29, 36.) It is undisputed that Plaintiff intermittently paid Oxford a commission on some form of direct payments, a decision made by Plaintiff's upper management "on a case-by-case basis." (*Id*. ¶ 35.) However, it is also undisputed that the Agreement does not contain any reference to direct payments, and does not provide that Defendant is entitled to

---

[3] According to Plaintiff, this is a term used by both parties "to describe a situation where a debtor whose Account Receivable has been assigned to Oxford by FDMS sent a payment, to partially or completely satisfy its debt to FDMS, directly to FDMS." (*Id*. ¶ 30.) According to Defendant, Oxford defines this "as any type of payment made directly to plaintiff or a credits [sic] issued by plaintiff while a collection account is placed for collections with Oxford. Direct payments or credits issued include, but are not limited to [various plaintiff transaction codes listed] . . . direct payments also included accounts where merchant banks instructed plaintiff to write off a balance and plaintiff Data in turn requested Oxford cease collections on collectible accounts where Oxford was likely to get paid by the debtor." (Def. 56.1 Cntrstmt. ¶ 30.)

any commission for direct payments.[4] It " provides only that Oxford will be paid a commission on amounts that Oxford collected." (*Id*. ¶ 33.)

Plaintiff filed suit for breach of contract, quantum meruit/unjust enrichment, and an accounting, seeking to recover in excess of $289.000.00. Defendant, by counterclaim, sought to recover $155,000.00 based on allegations that Plaintiff had not remitted to Defendant 25% commission on direct payments. During discovery, Plaintiff found that Defendant had withheld far in excess of the amount originally sought, in the amount of $1,301,777.04. Defendant admits that it withheld this amount, but interposes a counterclaim for $1,280,102.30. (Def. 56.1 Cntrstmt. ¶ 245.) Plaintiff moves now for Summary Judgment for breach of contract and for an accounting, requesting that this Court enter judgment in its favor and against Defendant in the amount of $1,301,777.00, or partial judgment on the issue of liability.[5]

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party. *See id*. at 249 (citing *Adickes v. S.H. Kress & Co.*,

---

[4] Defendant's argument that "plaintiff has acknowledged that Oxford is entitled to commission on direct payments in some form" cites to its own party's affidavit, which explains that a 2001 contract included a provision for commission on direct payments, and to irrelevant deposition testimony, neither of which supports this proposition. (Def. 56.1 Cntrstmt. ¶ 32.) These references do not show that Plaintiff acknowledged Oxford was "entitled" to commission, but rather that Oxford at times received commission on direct payments.
[5] Plaintiff does not move for summary judgment on its alternative claim for quantum meruit/unjust enrichment. (*See* Pl. Mem. in Support of Pl.'s Mot. for Summ. J. 3 n.1.). In any event, a valid written contract covering the dispute at issue precludes the quantum meruit claim. *See Aviv Constr., Inc. v. Antiquarium, Ltd.*, 687 N.Y.S.2d 344 (1999).

5

398 U.S. 144, 158-59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). The court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id*. at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id*. at 248; *see also Matsushita*, 475 U.S. at 586.

## **DISCUSSION**

Pursuant to New York law,[6] this Court interprets written contracts "so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992). The interpretation of a signed, unambiguous contract is a matter of law. *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d

---

[6] A forum selection clause mandates that New York law will govern any disputes arising out of the Agreement. (*See* Agreement ¶ 10.)

Cir. 2005). Summary judgment is appropriate when the contract's meaning is unambiguous. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir. 2005) (citations omitted). Ambiguity exists if the contract is objectively susceptible to more than one interpretation by a person of ordinary intelligence who has examined the entire agreement and understands the customs and terminology of the particular business in question. *Id.* That the parties urge different interpretations does not imply ambiguity; nor does ambiguity exist if one view "strain[s] the contract language beyond its reasonable and ordinary meaning." *Id.* "If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence and it may then award summary judgment." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).

## I.     LIABILITY

A party asserting a breach of contract must show: (1) the existence of an agreement; (2) Plaintiff's performance; (3) breach of the contract by Defendant; and (4) damages resulting from the breach. *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 42 (2d Cir. 2005); *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 450 (S.D.N.Y. 2005). Here, there is no real dispute as to any of the factors. Plaintiff and Defendant entered into the Agreement dated June 8, 2004. Pursuant to that Agreement, Plaintiff assigned to Defendant certain Accounts Receivable. Under the Agreement, Defendant was obliged to: establish a separate Client Trust Account and deposit in that account any Accounts Receivable payments it collected on the Plaintiff's behalf; remit those funds to Plaintiff within twenty-one days of receipt of Defendant's required invoice regarding any payments received; abide by certain reporting requirements; and remit all funds in the Client Trust Account within three days of

termination of the contract. Defendant was entitled to 25% of any Accounts Receivable payments collected.

At some point before August 2005, Defendant ceased providing to Plaintiff any information concerning payments collected, and ceased remitting funds to Plaintiff. After performing an audit, Plaintiff learned that Defendant had not established a Client Trust Account as required under the Agreement. Plaintiff notified Defendant that it would terminate the Agreement effective December 14, 2005. Defendant subsequently failed to transfer all funds it had collected on Plaintiff's behalf to Plaintiff within three business days of the date of termination, as required by the Agreement.

Defendant alleges that it is not liable for the ostensible breach of the Agreement. First, Defendant contends that the Agreement was modified by the partial performance of the parties. Second, Defendant contends that it withheld funds due to Plaintiff's failure to remit to Defendant 25% commission on direct payments. Neither argument is availing.

### A. **Modification by Performance**

Where, as here, a contract requires modifications to be effectuated in a signed writing, oral modifications are prohibited. *See* McKinney's General Obligations Law § 15-301 (2010); *John Street Leasehold LLC v. FDIC*, 196 F.3d 379, 382 (2d Cir. 1999); *Healy v. Williams*, 30 A.D.3d 466, 468, 818 N.Y.S.2d 121, 123 (App. Div. 2006); (Agreement § 11). In some cases, oral amendments to written contracts expressly requiring amendments to be in a signed writing are permitted. *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343 (1977). However, for oral modifications to be enforceable, the party urging enforcement must show that: (1) one party has partially performed under the terms of the oral agreement; (2) that party's partial performance is "unequivocally referable" to the modification; and (3) this conduct conferred a benefit on the

party opposing enforcement. *Rose*, 42 N.Y.2d at 344; *see also Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 (2d Cir. 1998); *Club Haven Inv. Co., LLC v. Capital Co. of Am, LLC*, 160 F. Supp. 2d 590, 592 (S.D.N.Y. 2001). To be "unequivocally referable," "the action taken must be unintelligible or at least extraordinary, explainable only with reference to the oral argument." *Merrill Lynch*, 155 F. 3d at 122 (internal quotation marks and citation omitted).

The modification alleged by Defendant appears to be its contention that Plaintiff "set up working sessions between [an Oxford and FDMS employee] to try to reconcile the net amount owed as a result of the direct payment dispute. All the while, plaintiff continued to send new accounts to Oxford for collection. Thus, the parties knowingly agreed by their performance to proceed in this manner until a resolution could be reached." (Def. Mem. 3-4.) Defendant's arguments in support – that Plaintiff's knowledge of Defendant's non-compliance with respect to the Client Trust Account and the remittance of funds, but failure to immediately terminate or change its course of business modified the Agreement – fail as a matter of law.

### 1. Client Trust Account

Defendant's proffered evidence does not support the allegation that Plaintiff was aware of Defendant's non-compliance with the Agreement by commingling assets and thus raises no genuine issue of material fact sufficient to defeat summary judgment.

Defendant cites testimony that, it claims, shows that one of Plaintiff's former employees, Krista Gebhard, knew that Defendant had not established a Client Trust Account. (Def. Mem. Ex. G.) Yet, this testimony actually shows that she knew of Defendant's contractual obligation to do so, but could not testify as to Defendant's compliance with that obligation. (*Id*.) Defendant also cites to an affidavit by Defendant's employee Charles Harris, which Defendant claims shows that Plaintiff was aware that Defendant failed to establish a Client Trust Account.

9

This testimony is both speculative, as it does not appear to be based on personal knowledge, and contradicted by Harris's own deposition testimony, in which he states that he did not know whether a Client Trust Account was established. (Def. Mem. Opp. to Pl. Mot. for Summ. J. Ex. J, 44:18-22.) *See Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 618 (2d Cir. 1996). Undisputed testimony by FDMS Vice-President John Collins indicates that Plaintiff was unaware of Defendant's non-compliance until a mid-2005 audit. (Def. Mem. Ex. H.)

Thus, there is no admissible evidence creating a genuine issue of fact as to whether Plaintiff was aware of and agreed to permit the commingling of funds.

### 2. Withheld Funds

Defendant next contends that Plaintiff was aware that Defendant was withholding funds, but continued to perform under the contract, thus modifying the Agreement. The evidence for this argument does not support this proposition.

Defendant's employee Jennifer Williams submitted an affidavit indicating that she provided monthly remittance reports to Plaintiff; from this fact, Defendant asks the Court to extrapolate that: (1) Plaintiff must have known of the funds withheld, and (2) agreed to this practice. Yet, even if Plaintiff received these reports, there is no evidence that Plaintiff was aware that Defendant was withholding any particular sum. In fact, undisputed testimony shows that Plaintiff attempted to collect from debtors funds already remitted to Defendant, emphasizing Plaintiff's ignorance of Defendant's collecting and withholding activities. Likewise, Plaintiff's original Complaint, seeking $289,000 in damages based on documents available to Plaintiff at the time, evinces a lack of knowledge as to the extent of Defendant's non-compliance with the Agreement even after the commencement of legal action. Indeed, the fact that it took Plaintiff

ninety days to terminate the contract does not evince acceptance of a purported modification to the Agreement.

Even allowing Defendant all the presumptions to which it is entitled, Defendant cannot show, as a matter of law, modification of the Agreement. Defendant has failed to show that there was partial performance of any kind of contract modification other than the non-performance by Defendant – that is, breach. The Defendant has further failed to show how any alleged partial performance could possibly be "unequivocally referable" to any modification. *Rose*, 42 N.Y.2d at 344. Last, Defendant cannot show that the conduct conferred a benefit on Plaintiff. Defendant makes no argument, and indeed, the Court can conceive of no argument, that would show any benefit to Plaintiff deriving from Defendant's withholding more than $1,000.000 for over five years.

The working sessions did not absolve the Defendant of its contemporaneous responsibility to remit funds to Plaintiff as stipulated in the contract, its prior responsibility to set up a Client Trust Account, or its subsequent responsibility to remit the funds when the contract was terminated. They were nothing more than an attempt to resolve an unrelated dispute without absolving either party of their contractual obligations. The alleged partial performance of an oral modification thus is insufficient to overcome the Agreement's integration clause.[7]

### 3. Partial Performance

Defendant, in its perfunctory and vague submissions to the Court, has failed to show any partial performance pursuant to an alleged oral modification, or how that partial performance is

---

[7] To the extent that Defendant argues that the parties' course of conduct constituted a waiver of their contractual obligations by Plaintiff, this argument also fails. "[W]aiver should not be lightly presumed." *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968 (1988). The Court will not extrapolate an intent to waive contractual rights from equivocal acts, such as those proffered by Defendant, discussed above. *Indus. Window Corp. v. Fed. Ins. Co.*, 609 F. Supp. 2d 329, 340 (S.D.N.Y. 2009). "'This principle particularly holds true where, as here, there is a clear and unambiguous merger clause in the operative agreement.'" *Id.* (quoting *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 599, 679 N.E.2d 624 (1997). Defendant has failed to allege waiver, or to put forward any admissible evidence that shows Plaintiff knowingly waived contractual rights.

"unequivocally referable" thereto. Nor has Defendant proffered any evidence as to why Plaintiff would agree to allow Defendant to commingle assets and withhold more than $1,000,000 for over five years, or any benefit that could result from such a deviation. Defendant's an argument strains credulity, is wholly unsupported by the record, and does not raise a material issue of fact from which a rational jury could find for the Defendant.

Thus, for the forgoing reasons, Defendant has failed to show that there exists a genuine issue of material fact as to whether any modification to the contract excused Defendant's performance.

## B. Direct Payments and "Offset"

Defendant, in defense of its breach, explains that it withheld funds after termination "for offset," because it believed that it was owed money by Plaintiff for commissions on Direct Payments. Defendant claims that there is a triable issue of fact with regard to whether and to what extent they were owed direct payments, the definition of which is contested between the parties. Defendant, however, cannot defeat summary judgment on the matter of the breach of contract on the basis of an independent cross-claim for which it did not move for summary judgment. *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F. Supp. 814, 823 (S.D.N.Y. 1992) ("where a counterclaim presents an independent, unliquidated claim and presents no issue of fact as to the plaintiff's claim, the entry of summary judgment on plaintiff's claim is not only proper but is required")(internal quotation and citation omitted). Nor is Defendant entitled to self-help. The direct payment issue, though it may raise a genuine issue of fact, is independent from the breach of contract claim, and thus is insufficient to defeat Plaintiff's motion regarding breach. ("Offset claims do not bar summary judgment on ... payment obligations unless such obligations and the offset claims involve contractually 'dependent' promises." *Touissant v. James*, No. 01

Civ. 10048 (SHS), 2003 WL 21738974, at *8 (S.D.N.Y. 2003) (quoting *Pereira v. Cogan*, 267 B.R. 500, 507 (S.D.N.Y. 2001)).

Defendant urges the Court to find that the "working sessions" established between the parties constituted partial performance of an oral modification to the Agreement, relating to direct payments. However, Defendant would be hard-pressed to show that an agreement to grant Defendant commission on direct payments at Plaintiff's discretion constituted an oral modification of the contract -- especially given the fact that this was already the case under the Agreement. Indeed, even assuming that these "working sessions" constituted partial performance of a modification to the Agreement allowing commission on Direct Payments, Defendant's argument fails. The parties have agreed that the payments to Defendant granting commission on direct payments were evaluated on a case-by-case basis by upper management. Performance is not "unequivocally referable" to the modification here – it is wholly consistent with the Plaintiff's contention that the decision of whether to award Defendant commission on direct payments was made on a case-by-case basis, as a matter wholly independent from contractual obligation. Moreover, it seems again impossible that Plaintiff enjoyed a benefit from this conduct. *Rose*, 42 N.Y.2d at 344; *see also Merrill Lynch*, 155 F.3d at 121.

The facts and circumstances underlying Defendant's counterclaim for commission on direct payments are yet to be determined. As such, any damages to which Defendant may be entitled on the counterclaim cannot defeat Plaintiff's motion. Even if Defendant is entitled to any commission on direct payments in the first place, Defendant was not entitled to unilaterally withhold funds collected on Plaintiff's behalf pursuant to the terms of the contract. The issue is

distinct from the breach of contract claim alleged by Plaintiff, and accordingly, summary judgment is GRANTED on the issue of liability.[8]

## II. ACCOUNTING

"Where a party seeks an accounting, but the primary demand is for monetary damages, the accounting is merely a method to determine the amount of the monetary damages. The action therefore sounds in law and not in equity." *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 202 (E.D.N.Y. 2007) (citing *Arrow Comm'cn Labs. V. Pico Prods. Inc.*, 632 N.Y.S.2d 903, 905 (App. Div. 1995). "An accounting claim is not proper where money damages are recoverable under alternative causes of action for the same injury." *See CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) *aff'd*, 328 F. App'x 56 (2d Cir. 2009); *Banks*, 475 F. Supp. 2d at 202; *see also Basquiat v. David DeSanctis Contemporary Art, Inc.*, No. 09 Civ. 1025 (PKC), 2009 WL 3270794, at *2 (S.D.N.Y. Oct. 29, 2010). Here, Plaintiff has sought money damages in its breach of contract claim, and discovery regarding the measure of available damages to which it would be entitled in the event they prevail on those claims has already proceeded. Thus summary judgment is DENIED as to Plaintiff's claim for an accounting.

## III. DAMAGES

A plaintiff must substantiate a claim with evidence to prove the extent of damages. Although an evidentiary hearing may be held, "it is not necessary for the district court to hold a hearing, as long as . . . there was a basis for the damages specified." *Transatlantic Marine*

---

[8] Defendant's assertion in its Memorandum that "Oxford should receive some credit for remittances to plaintiff where the underlying check from the debtor to Oxford was returned for insufficient funds in the amount of $19,193.09" is insufficient to reduce the award to Plaintiff. Defendant has pointed to no specific provision in the contract that would entitle it to this money despite its breach, and moreover simply cites to an Exhibit as evidence supporting their allegation without further explanation. The number cited itself appears nowhere in the Exhibit. Thus Defendant has failed to create a genuine issue of fact in this regard.

*Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (district judges are given discretion to determine the necessity of an inquest).

Though the parties agree that Defendant withheld $1,301,777.04 from Plaintiff, neither party focuses on the proper of measure of damages to be awarded upon a finding of liability. As noted, the scope of Defendant's breach was not fully determined until discovery, and well exceeds the amount of damages originally pled in Plaintiff's Complaint. Defendant's only reference to commission on the withheld funds in its five-page Memorandum in Opposition to the Motion for Summary Judgment is a conclusory and wholly unsupported argument: "In the event that the court does find Oxford breached the contract, at a minimum, Oxford is entitled to a commission $325,444.26 [sic] for the 1,301,777.04 collected." (Def. Mem. in Opp. to Mot. for Summ. J. 4.) Defendant has failed to show why, in the face of clear breach, Defendant should be entitled to reap the benefit of the very contract it violated.

In light of the paucity of evidence and argument in support of damages, the Court at this time will enter judgment for Plaintiff and against Defendant on liability alone, and will address the proper measure of damages at a conference to be scheduled by separate order.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment on liability as to the breach of contract claim is GRANTED. Plaintiff's motion for an accounting is DENIED. The Court will address damages at a conference to be scheduled by separate order.

                                                            SO ORDERED.

Dated: Brooklyn, New York                                          /S/
       March 30, 2011                                                 _____
                                                                 ROSLYNN R. MAUSKOPF
                                                                 United States District Judge